KNEUPPER & COVEY, PC
A. Lorraine Weekes, Esq. (CA SBN 332369)
lorraine@kneuppercovey.com
Kevin Kneupper, Esq. (CA SBN 325413)
kevin@kneuppercovey.com
Cyclone Covey, Esq. (CA SBN 335957)
cyclone@kneuppercovey.com
17011 Beach Blvd., Suite 900
Huntington Beach, CA 92647
Tel: 657-845-3100
Fax: 855-596-3707

*Attorney for Plaintiffs Jade Bartholomew and Saige Bartholomew*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JADE BARTHOLOMEW, and SAIGE BARTHOLOMEW,<br><br>Plaintiffs,<br><br>vs.<br><br>HOME DEPOT U.S.A., INC.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. Negligence;<br>2. Violation of the Elder Abuse and Dependent Adult Civil Protection Act;<br>3. Violation of California's Unfair Competition Law;<br>4. Violation of the Consumers Legal Remedies Act;<br>5. Breach of contract;<br>6. Breach of warranty;<br>7. Breach of implied covenant to perform work in a good and workmanlike manner; and<br>8. Nuisance. |

**DEMAND FOR JURY TRIAL**

Plaintiffs Jade Bartholomew and Saige Bartholomew, by and through the undersigned counsel, hereby file this Complaint against Defendant Home Depot U.S.A., Inc. ("Home Depot") and alleges as follows:

## JURISDICTION AND VENUE

1. This court has original jurisdiction in this action pursuant to 28 U.S. Code § 1332(a)(1) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States.

2. This court has personal jurisdiction over Home Depot because Home Depot has sufficient minimum contacts with California, has purposely availed itself of the benefits and protection of California law, and conducts a substantial amount of business in and with the State of California, such that the Court's exercise of personal jurisdiction over Home Depot is reasonable and accords with due process.

3. Venue is proper in the Central District of California pursuant to 28 U.S. Code § 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred and because this is the judicial district in which the property that is the subject of the action is situated.

## THE PARTIES

4. Plaintiff Jade Bartholomew is a citizen of the State of California. She owns a residential property in Orange County, California, which is the site of the events at issue in this lawsuit. Plaintiff Jade Bartholomew contracted with Defendant Home Depot on October 25, 2024, for home improvement work.

5. Plaintiff Saige Bartholomew is a citizen of the State of California. Until the events outlined in this complaint, she lived with her grandmother at the Orange County residential property at issue in this case.

6. Defendant Home Depot U.S.A., Inc. is a Georgia corporation with its principal place of business at 2455 Paces Ferry Road, Atlanta, GA 30339.

## FACTUAL ALLEGATIONS

7. On or around October 25, 2024, Plaintiff Jade Bartholomew and her granddaughter Plaintiff Saige Bartholomew discovered a slab leak in their La Palma, California, home.

8. Ms. Jade Bartholomew called a home repair company which sent a salesman to Ms. Bartholomew's home that same day, October 25, 2024.

9. The salesman emphasized the urgency of beginning repair work and presented Ms. Jade Bartholomew with a home improvement contract on a computer tablet for her review. Ms. Jade Bartholomew was not presented with a hard copy of the home improvement contract to review.

10. The contract was with Defendant Home Depot and was described as a "Home Depot Home Improvement Agreement." The contract price was $25,490.00. The contract identified Nexgen Air Conditioning, Heating and Plumbing LLC ("Nexgen") as Defendant Home Depot's "Authorized Service Provider."

11. Plaintiff Jade Bartholomew signed the Home Depot Home Improvement Agreement on October 25, 2024.

12. That same day, the salesman also presented Ms. Jade Bartholomew with a financing contract, which Ms. Jade Bartholomew executed. The total of payments due under that contract was $37,183.80, which includes principal and interest.

13. On or around Sunday, October 27, 2024, a large number of repair people descended on Ms. Jade Bartholomew's home and began cutting interior and exterior holes.

14. Despite the fact that the leak was *under* the home, a workman went in Ms. Jade Bartholomew's attic and then crashed through Ms. Jade Bartholomew's ceiling causing debris and dust to rain down from the gaping hole.

15. The ceiling the workman crashed through was a "popcorn" ceiling that contained asbestos.

16. Ms. Jade Bartholomew, who is in poor health and fighting cancer, promptly asked Home Depot's repair people whether it was safe to continue staying in her home given the disturbed asbestos, and they assured her it was and stated they would have it tested later. The Plaintiffs were also concerned about the impact of the disturbed asbestos on Plaintiff Saige Bartholomew, who has Pyogenic Arthritis, Pyoderma gangrenosum, and Acne ("PAPA") syndrome, which makes her especially sensitive to environmental hazards.

17. Home Depot's Authorized Service Provider Nexgen subsequently represented to Ms. Jade Bartholomew that it had tested her home for asbestos and the asbestos level in her ceiling

was "only ten percent" and that it was perfectly safe for her to continue living in the home.

18. Ms. Jade Bartholomew noticed significant cracking in her hallway, apparently caused by Home Depot or its Authorized Service Provider Nexgen's work in her attic. The repair people subsequently removed a large portion of the ceiling in Plaintiffs' hallway and then began attempting to "repair" it.

19. On information and belief, the holes in the ceiling and exterior of the residence created by Home Depot's agent, Nexgen, led to a rodent infestation in Plaintiffs' garage.

20. Home Depot and/or its Authorized Service Provider Nexgen destroyed Ms. Jade Bartholomew's home, rendering it uninhabitable and causing significant damage to the possessions of Plaintiff Saige Bartholomew. Throughout the course of Defendant's work at Plaintiffs' home, the home was left in disorder, making it hard for Plaintiffs to live there safely and productively. The company did not adequately repair the holes it had created throughout her home. Once, when Plaintiff Saige Bartholomew was walking in the home, wet drywall compound from Defendant's unworkmanlike repairs fell on her.

21. Angry at the damage Defendant had caused to their home, Plaintiffs repeatedly contacted Home Depot for help. They were ignored. Ms. Jade Bartholomew then reached out to the California State Licensing Board ("CSLB"). Only when the CSLB prepared a report did Home Depot contact Ms. Bartholomew.

22. Mr. Robert Ross, a representative of Home Depot, came to Ms. Jade Bartholomew's home. Upon seeing the havoc Defendant had wreaked on Plaintiffs' residence, Mr. Ross was appalled. He was especially concerned by the numerous holes Defendant had cut through the walls and its failure to patch them. He stated that after looking at the holes, the first thing he would want to do is test for asbestos.

23. Ramboll, an asbestos risk management company that was on information and belief retained by Home Depot and acting as Home Depot's agent, tested Ms. Jade Bartholomew's home for asbestos. When the results came back, Plaintiffs were told they had to evacuate their home right away due to asbestos that Defendant's assault on Ms. Jade Bartholomew's home had scattered throughout the property.

24. Ms. Jade Bartholomew requested a copy of the report from Ramboll, but Defendant repeatedly failed to provide it to her, maliciously denying her information about the environmental health hazards it had callously inflicted on Plaintiffs.

25. In summer 2025, after months of living in a home coated in asbestos dust, Ms. Jade Bartholomew and Plaintiff Saige Bartholomew evacuated to an Airbnb. Defendant arranged for an "abatement" of the asbestos in Plaintiffs' home.

26. The company handling the "abatement"—on information and belief an agent of Defendant Home Depot—was supposed to provide Plaintiffs an opportunity to review a detailed inventory of the contents in their home—the majority of which had been contaminated by asbestos—to determine which items they wanted to keep.

27. Plaintiff Saige Bartholomew's primary source of income was selling items online and she had thousands of dollars of goods stored in her home.

28. The "inventory" provided to Plaintiffs was jumbled, incomplete, and difficult to navigate. Many important and valuable possessions were left off the inventory, and others were grouped together with numerous other items, making it virtually impossible for Plaintiffs to review and assess the inventory.

29. Defendant, through its agents, subjected Plaintiffs to unreasonable demands and arbitrary time limits in connection with inventorying belongings impacted by the abatement.

30. In or around October 11, 2025, Michelle Campbell of Ramboll, on information and belief an agent of Home Depot, informed Plaintiffs that their home had been abated and was ready for their return.

31. When Plaintiffs returned home, they discovered a house in complete disarray. Their home was stripped of all appliances except the refrigerator. Their light and ceiling fixtures had been removed. There were rodent droppings in the home, an issue they had never had before. Some furniture was broken, their mattresses were taken, their shower door no longer closed properly, their kitchen and bathroom fixtures were incorrectly installed, and their patio was littered with broken items. Defendant or its agents had run completely amok in Plaintiffs' home and yard. Ms. Jade Bartholomew felt as if a bomb had gone off in her home.

32. There was also water damage to Plaintiffs' home that was not there when they left earlier that year.

33. Most concerningly, even though Defendant and/or its agents claimed the abatement was complete, a thick layer of dust—the same contaminant that had precipitated Plaintiffs' evacuation from their home—remained in areas throughout the home.

34. Many of the holes Defendant cut in Plaintiffs' home were left unrepaired.

35. When Ms. Jade Bartholomew complained about the poor job that had been done installing one of her bathroom fixtures, Defendant or its agent criticized her for "being anal."

36. Because of the holes and asbestos dust throughout their home, the Plaintiffs do not feel comfortable returning to their home. Ms. Jade Bartholomew has incurred, and continues to incur, significant rental expenses because she and her granddaughter Saige Bartholomew cannot return to their home.

37. Ms. Jade Bartholomew also incurred significant expenses due to rodent damage. Both Plaintiffs have also suffered damages because of property damage caused by rodents.

38. At Defendant's direction, both Plaintiffs spent months living in a home that Home Depot had contaminated with asbestos.

39. According to the United States Department of Labor's Occupational Safety and Health Administration, "[t]here is no 'safe' level of asbestos exposure for any type of asbestos fiber. Asbestos exposures as short in duration as a few days have caused mesothelioma in humans."[1]

40. On information and belief, both the health and wellbeing of both Plaintiffs were harmed by the months they spent living in the residence Home Depot had contaminated with asbestos.

41. On information and belief, both Plaintiffs suffer from an increased risk of mesothelioma as a result of Defendant's conduct.

42. Both Plaintiffs suffered emotional and psychological distress as a result of the

---

[1] *See* "Asbestos," Occupational Safety and Health Administration, *available at* https://www.osha.gov/asbestos (last accessed April 2, 2026).

displacement, damage to their home, environmental dangers, and loss of personal property Defendant caused. During the events described herein, a close family member, Jade Bartholomew's daughter and Saige Bartholomew's mother, passed away. The personal effects of Plaintiffs' family member—some of them sentimental—were impacted by the events described herein, exacerbating the distress and anguish Plaintiff experienced as a result of Defendant's conduct.

43. On information and belief, the unsafe and defective conditions within the home created by Defendants exacerbated Plaintiff Saige Bartholomew's pre-existing medical conditions, including PAPA syndrome. As a result, she experienced severe symptoms, including significant pain, inflammation, skin complications, fainting episodes, and cognitive impairment, causing her pain and suffering. These exacerbations substantially interfered with Plaintiff Saige Bartholomew's daily functioning and overall health.

44. As a direct result of the Defendants' actions, Plaintiff Saige Bartholomew suffered loss of income and profits. She operates an online business selling merchandise from her home and was unable to engage in the regular course of that business due to loss of access to inventory, damage to goods, and displacement from the home. She has suffered and continues to suffer lost profits.

## FIRST CAUSE OF ACTION

## NEGLIGENCE

*By both Plaintiffs*

45. Defendant had a duty of care to Plaintiffs. Specifically, Defendant had a duty to use reasonable care while working in Plaintiffs' home.

46. Defendant breached its duty of care by acting negligently in, among other things, crashing through Plaintiffs' ceiling, telling Plaintiffs their home was safe to live in despite the asbestos dust everywhere, cutting and leaving exposed holes throughout Plaintiffs' home, and otherwise undertaking "repair" or "abatement" work throughout Plaintiffs' home in a reckless and careless manner.

47. Plaintiffs were harmed by Defendant's negligence insofar as they both suffered

damage to, and loss of, possessions, as well as substantial interference with their ability to live in and enjoy their home. Ms. Jade Bartholomew suffered damage to real property she owned.

48. Plaintiffs were further harmed by Defendant's negligence insofar as they had to evacuate their home and pay for other accommodations and insofar as they spent months breathing air contaminated by asbestos, touching surfaces contaminated by asbestos dust, and generally moving, sleeping, and living in an environment contaminated by asbestos dust.

49. Defendant's negligence caused Plaintiffs' damages.

**SECOND CAUSE OF ACTION**

**FINANCIAL ELDER ABUSE**

*By Plaintiff Jade Bartholomew*

50. "Financial elder abuse" occurs when a person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both." WIC § 15610.30(a)(1).

51. Ms. Jade Bartholomew, who is over 80 and resides in California, is an "elder" as that term is used in Welfare and Institutions Code section 15610.30. See WIC § 15610.27 ("'Elder' means any person residing in this state, 65 years of age or older.').

52. Defendant took, secreted, appropriated or obtained Ms. Jade Bartholomew's property, specifically her home and possessions within it, for a wrongful use. Defendant's taking of Ms. Jade Bartholomew's property was "for a wrongful use" because Defendant knew that its taking of Ms. Jade Bartholomew's property was "likely to be harmful to [Ms. Jade Bartholomew]." See WIC § 15610.30(b).

53. Ms. Jade Bartholomew is entitled to compensatory damages for the injuries she has suffered as a result of Defendant's financial elder abuse as well as reasonable attorney's fees and costs. *See* WIC § 15657.5(a).

**THIRD CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")**

*By both Plaintiffs*

54. Plaintiffs bring this claim under the "unfair" and "unlawful" prongs of California's

Unfair Competition Law ("UCL").

55. The UCL prohibits "unfair competition," which includes any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *See* Cal. Bus. & Prof. Code § 17200.

56. Defendant engaged in unfair acts by, among other things, contaminating and discarding Plaintiffs' possessions, cutting holes in Plaintiffs' home that were not timely repaired, leaving Plaintiffs' home in a trashed condition, damaging Plaintiffs' home and failing to repair that damage, making unreasonable demands of Plaintiffs relating to the inventorying of their possessions, and contaminating Plaintiffs' home with asbestos, and misleading Plaintiffs about the environmental risks they would face if they remained in their home.

57. Defendant's conduct as described herein offends established public policies and its conduct as described herein is unethical, oppressive, and unscrupulous, as well as substantially injurious to Plaintiffs.

58. Defendant's unfair acts do not have any countervailing benefits for consumers.

59. There were reasonably available alternatives to further the Defendant's legitimate business interests other than the conduct described herein.

60. As a direct and proximate result of Defendant's violations of the UCL, Plaintiffs suffered injury in fact and lost property.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT**

*By both Plaintiffs*

61. The Consumers Legal Remedies Act (CLRA) prohibits unfair and deceptive acts and practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

62. Defendant violated California Civil Code section 1770(a)(5) by representing that it would conduct repairs at Ms. Bartholomew's home in a workmanlike manner when, in fact, it would not and by representing that the asbestos dust Defendant had caused to circulate in Ms. Bartholomew's home had been abated when, on information and belief, it had not entirely been

abated.

63. Defendant violated California Civil Code section 1770(a)(7) by representing that it would offer Ms. Jade Bartholomew services of a workmanlike standard and quality when, in reality, the services they provided Ms. Bartholomew were not of a workmanlike standard or quality.

64. Plaintiffs sent Defendant a letter via certified mail, return receipt requested, notifying them of the above CLRA violations more than thirty days before the filing of this complaint.

65. Defendant did not cure its violations of the CLRA within 30 days of receiving Plaintiff's letter notifying them of those CLRA violations.

66. As a result of Defendant's violations of the CLRA, Plaintiffs have suffered harm, including financial losses and emotional distress.

67. Ms. Jade Bartholomew is older than sixty-five and is a "senior citizen" as that term is used in California Civil Code section 1761(f).

68. Defendant's violations of the CLRA have caused Plaintiff Jade Bartholomew substantial economic damage and resulted in limiting her use of her primary residence insofar as Defendant left Ms. Jade Bartholomew's home in disarray and with visible dust that Ms. Bartholomew is informed and believes contains asbestos. Ms. Jade Bartholomew may be awarded an additional $5,000. *See* Cal Civ Code § 1780(b)(1).

**FIFTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

*By Plaintiff Jade Bartholomew*

69. The contract between Plaintiff Jade Bartholomew and Defendant Home Depot states that "Home Depot or Service Provider will complete the Services in a workmanlike manner and in accordance with applicable law without causing damage to Your Home."

70. Home Depot breached its contractual obligations to Ms. Jade Bartholomew by failing to complete the services outlined in the home improvement contract in a workmanlike manner.

71. Home Depot breached its contractual obligations to Ms. Jade Bartholomew by causing damage by failing to complete the contracted-for home improvement services "without causing damage to [Ms. Bartholomew's] home."

72. Ms. Jade Bartholomew was damaged by Home Depot's breaches of its contractual obligations to her insofar as her home has been damaged and is in disarray.

**<u>SIXTH CAUSE OF ACTION</u>**

**BREACH OF EXPRESS WARRANTY**

*By Plaintiff Jade Bartholomew*

73. In its home improvement contract with Ms. Bartholomew, Home Depot warrants that "for 1 year from the completion date . . . that all Services will be performed with good workmanship and will conform to the requirements of the Agreement." This express warranty was part of the basis of the bargain between Defendant Home Depot and Plaintiff Jade Bartholomew.

74. The home improvement and repair services Home Depot provided Ms. Jade Bartholomew did not conform to Home Depot's express warranty insofar as they were not performed with good workmanship. The home improvement and repair services Home Depot provided Ms. Jade Bartholomew also did not conform to Home Depot's express warranty insofar as they did not "conform to the requirements of the Agreement" because they caused damage to Ms. Jade Bartholomew's home.

75. Within a reasonable time, Ms. Jade Bartholomew took reasonable steps to notify Defendant Home Depot that the services she received were not consistent with the warranty, but Home Depot did not cure its breach of warranty.

76. Plaintiff Jade Bartholomew was harmed by Defendant Home Depot's breach of warranty.

77. The failure of Home Depot's services to conform to its warranty was a substantial factor in causing Plaintiff Jade Bartholomew's harm.

**SEVENTH CAUSE OF ACTION**

**BREACH OF IMPLIED COVENANT TO PERFORM WORK IN A GOOD AND COMPETENT MANNER**

*By Plaintiff Jade Bartholomew*

78. Defendant Home Depot failed to perform its work competently by, among other things, crashing through Plaintiffs' ceiling, cutting and then failing to repair holes throughout Plaintiffs' home, discarding and contaminating Plaintiffs' possessions, allowing rodents to permeate Plaintiffs' home, and generally failing to perform the repair and abatement work it undertook at Plaintiffs' home in a good and competent manner.

79. Plaintiff Jade Bartholomew was harmed by Defendant's failure to perform work in a good and competent manner.

**EIGHTH CAUSE OF ACTION**

**NUISANCE**

*By Both Plaintiffs*

80. Plaintiff Jade Bartholomew owned and resided in her Orange County home at the time the events at issue in this action began.

81. Plaintiff Saige Bartholomew occupied the Orange County home owned by her grandmother at the time the events at issue in this action began.

82. Defendant, by acting or failing to act as alleged herein, caused a condition to exist that was harmful to Plaintiffs' health or was an obstruction to Plaintiffs' free use of their property so as to interfere with their comfortable enjoyment of life and their residence.

83. Defendant's conduct in acting or failing to act was intentional and unreasonable or, alternatively, unintentional but negligent or reckless.

84. The condition that Defendant caused to exist in Plaintiffs' Orange County residence substantially interfered with Plaintiffs' use or enjoyment of their residence.

85. An ordinary person would reasonably be annoyed or disturbed by Home Depot's conduct.

86. Plaintiffs were harmed by Home Depot's conduct and that conduct was a

substantial factor in causing Plaintiffs' harm.

87. The seriousness of the harm suffered by Plaintiffs outweighs the public benefit, if any, of Defendant Home Depot's conduct.

88. In maintaining the nuisance, Defendant acted with full knowledge of the consequences thereof and of the damage being caused to Plaintiffs. Despite this knowledge, Defendant failed to abate the nuisance. Defendant's failure to repair the defective and dangerous conditions Defendant's own negligence caused, or to have them repaired within a reasonable time after actual and/or constructive notice of the conditions, as alleged above, was oppressive and malicious within the meaning of Civil Code section 3294 in that this failure subjected Plaintiffs to harsh and unjust hardship in willful and conscious disregard of Plaintiffs' rights and safety, thereby entitling Plaintiffs to an award of punitive damages to be proven at trial.

## PRAYER FOR RELIEF

Plaintiffs seek the following:

A. Economic and non-economic damages in an amount to be determined by the jury;

B. Nominal damages;

C. Consequential damages;

D. Punitive damages;

E. Restitution of all monies paid under Ms. Bartholomew's Home Improvement Contract;

F. Disgorgement of profits;

G. Injunctive relief in the form of an order directing Defendant to return Plaintiffs' home to the state it was in before Defendant began working on the premises;

H. Plaintiffs' reasonable attorneys' fees as provided for by law, contract, or statute, including a contingency-fee multiplier to account for the contingent nature of Plaintiffs' representation;

I. An award of $5,000 for Plaintiff Jade Bartholomew. *See* Cal Civ Code § 1780(b)(1).

J. Plaintiffs' costs and expenses associated with this action; and

K. Such other relief as the court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand that the claims herein asserted be determined by a jury.

DATED: April 9, 2026.

Respectfully submitted,

A. Lorraine Weekes, Esq. (CA SBN 332369)
lorraine@kneuppercovey.com

KNEUPPER & COVEY, PC
17011 Beach Blvd., Suite 900
Huntington Beach, CA 92647
Tel: 657-845-3100
Fax: 855-596-3707

*Attorney for Plaintiffs Jade Bartholomew and Saige Bartholomew*